## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC., *et al.,*

        *Plaintiffs,*

   v.

U.S. DEPARTMENT OF DEFENSE,

        *Defendant.*

No. 19-cv-1384 (DLF)

## MEMORANDUM OPINION

The plaintiffs, Judicial Watch and the Daily Caller News Foundation, bring this suit alleging that the Department of Defense (the Department) withheld various records in violation of the Freedom of Information Act, 5 U.S.C. § 552 *et seq*. (FOIA). In particular, the plaintiffs seek all communications relating to the issue of women being permitted to serve in all Marine Corps occupational specialties. Compl., Dkt. 1. Before the Court is the Department's Motion for Summary Judgment, Dkt. 15, and the plaintiffs' Cross-Motion for Summary Judgment, Dkt. 18. For the reasons that follow, the Court will grant the Department's Motion for Summary Judgment and deny the plaintiffs' Cross-Motion for Summary Judgment.

## I.    BACKGROUND

In 2017, the plaintiffs submitted FOIA requests to the Office of the Secretary of Defense/Joint Staff and the Navy for "[a]ny and all supporting documents, including but not limited to studies, analyses, reports and memoranda, that accompanied then-Marine Corps Commandant Joseph Dunford's September 2015 request to then-Navy Secretary Ray Mabus and/or then-Secretary of Defense Ash Carter that exceptions be made to allowing women to

serve in all Marine Corps occupational specialties." Compl. ¶ 6. When the request was not acted on in time, the plaintiffs brought this suit. *See id.* ¶ 9.

In the end, the Department disclosed ten documents in full and two documents with partial redactions. *See* Hogue Decl. ¶ 12, Dkt. 15-4. It also withheld in full seven documents totaling 29 pages. *Id.* The withheld or redacted documents include two internal memoranda analyzing the issue of women serving in all occupational specialties in the Marine Corps, *see id.* ¶ 15 (Dunford memorandum); *Vaughn* Index at 5, Dkt. 15-6 (second Dunford memorandum), as well as supporting documents that provide further analysis or evidence on the topic, *id.* at 3 (slides); *id.* (information paper); *id.* at 5 (chart); *id.* at 6–7 (Word document). The parties have conferred and narrowed this case to a single issue: whether the Department properly withheld or redacted these records pursuant to FOIA Exemption 5. *See* 5 U.S.C. § 552(b)(5). The Department argues that the internal memoranda and supporting documents at issue are deliberative and predecisional, *see* Def.'s Mem. in Supp. of Mot. for Summ. J. at 7, Dkt. 15-2, while the plaintiffs argue that at least parts of the documents are merely factual, not deliberative, *see generally* Pls.' Cross Mot. for Summ. J., and that release of the documents would cause no specific harm to the Department*, id.*

## II.   LEGAL STANDARDS

Rule 56 of the Federal Rules of Civil Procedure states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When a federal agency moves for summary judgment in a FOIA case, the court views all facts and inferences in the light most favorable to the requester, and the agency bears the burden of

showing that it complied with FOIA.  *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).

To prevail under Rule 56, a federal agency "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the [FOIA's] inspection requirements."  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (per curiam) (internal quotation marks omitted).  The agency "must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents," *Weisberg v. U.S. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983), and must also explain why any of the nine enumerated exemptions listed in 5 U.S.C. § 552(b) apply to withheld information, *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 147 (D.C. Cir. 2006); *see also Mobley v. CIA*, 806 F.3d 568, 580 (D.C. Cir. 2015) (agency bears burden of justifying application of exemptions, "which are exclusive and must be narrowly construed").

"The peculiarities inherent in FOIA litigation, with the responding agencies often in sole possession of requested records and with information searches conducted only by agency personnel, have led federal courts to rely on government affidavits to determine whether the statutory obligations of the FOIA have been met."  *Perry*, 684 F.2d at 126.  Agency affidavits are entitled to a presumption of good faith, *see SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and a court may grant summary judgment based on an affidavit if it contains reasonably specific detail and neither contradictory record evidence nor evidence of bad faith calls it into question, *see Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013).  The "vast majority of FOIA cases can be resolved on summary judgment."  *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

III.    ANALYSIS

This case concerns whether the Department properly withheld and redacted two sets of records pursuant to FOIA Exemption 5—a set of memoranda and a set of supporting documents.[1]  *See generally* Compl.  FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  This exemption "incorporates the traditional privileges that the Government could assert in civil litigation against a private litigant—including . . . the attorney-client privilege, the work-product privilege, and the deliberative process privilege."  *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (internal quotation marks omitted).

The deliberative process privilege incorporated into FOIA Exemption 5 allows agencies to withhold "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *Petrol. Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (internal quotation marks omitted).  To invoke the deliberative process privilege, an agency must show that the information withheld is both "predecisional" and "deliberative."  *Id.* at 1434.  A document is "predecisional if 'it was generated before the adoption of an agency policy' and deliberative if 'it reflects the give-and-take of the consultative process.'"  *Judicial Watch, Inc. v. FDA*, 449 F.3d at 151 (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

---

[1] The plaintiffs do not challenge the adequacy of the Department's search.  *See generally* Pls.' Cross Mot. for Summ. J.; *see also* Joint Status Report and Proposed Briefing Schedule ¶ 4, Dkt. 11.

A.    The Memoranda

The plaintiffs challenge the Department's withholding of two memoranda: first, a memorandum by then-Marine Corps Commandant Joseph Dunford to the then-Secretary of Navy, which outlined his request that the Marine Corps be granted an exception to the policy that women be permitted to serve in all occupational specialties, as well as his analysis on the relationship between gender integration and combat effectiveness, *see* Hogue Decl. ¶ 15, and second, another memorandum from Dunford to the Secretary explaining the practical implications of his request to limit certain roles to male Marines, *see* Second Hogue Decl. ¶ 17, Dkt. 21-3.  The Department initially redacted all of the first Dunford memorandum save for one paragraph, but later released a less redacted version when the plaintiffs indicated that a less redacted version had already been released to other parties.  *See id.* ¶ 7.  It withheld the second Dunford memorandum in its entirety.  *See Vaughn* Index at 5.

The Department properly invokes Exemption 5 to withhold these documents as they are both predecisional and deliberative.  *See* 5 U.S.C. § 552(b)(5).  First, there is no question that the memoranda predate any final decision about the implementation of the gender integration policy in the Marine Corps.  *See* Second Hogue Decl. ¶ 20 (explaining that the second memorandum was submitted in September 2015, as part of the package requesting an exception for the Marine Corps and before any "final policy decision"); *Judicial Watch, Inc. v. FDA*, 449 F.3d at 151 (holding that a document is predecisional if it was generated before the adoption of an agency policy).  Second, the documents are deliberative, as they "reflect[] the give-and-take of the consultative process."  *Id.*  Indeed, Dunford submitted the memoranda with the very intent to influence the final policy as to the Marine Corps.  *See* Second Hogue Decl. ¶ 20.

The factors identified in *Judicial Watch, Inc. v. U.S. Department of Justice*, 20 F. Supp. 3d 260, 269–72 (D.D.C. 2014), further counsel in favor of finding these internal memoranda to fall within Exemption 5.  The first factor weighs "the timing of the document's release relative to the date the decision is made," *id.* at 269; *see also Nat'l Right to Work Legal Def. & Educ. Found., Inc. v. U.S. Dep't of Labor*, 828 F. Supp. 2d 183, 189 (D.D.C. 2011) ("The timing of a record is important in the analysis; communications made after a decision has been made and designed to explain that decision are not privileged under Exemption 5.").  As discussed above, Dunford submitted the memoranda to the Secretary before the Secretary had decided whether to grant the request for an exception to full gender integration, and Dunford did so with the intent to influence that decision.  *See* Second Hogue Decl. ¶ 20.

The second factor considers "the relationship between the author and recipient of the document." *Judicial Watch, Inc. v. U.S. Department of Justice*, 20 F. Supp. 3d at 270.  The relevant question is "whether a person in the author's position, particularly a subordinate, would typically provide advice to a person in the recipient's position as part of the decision-making process." *Id.*  The hierarchical relationship between the actors is important because "a document from a junior to a senior is likely to reflect his or her own subjective opinions and will clearly have no binding effect on the recipient." *Access Reps. v. DOJ*, 926 F.2d 1192, 1195 (D.C. Cir. 1991).  "By contrast, one moving from senior to junior is far more likely to manifest decisionmaking authority and to be the denouement of the decisionmaking rather than part of its give-and-take." *Id.*  Dunford wrote the memoranda for the Secretary of the Navy, "his reporting senior."  Second Hogue Decl. ¶ 20.  The Hogue declaration explains that the Marine Corps is part of the Department of the Navy, and "in many instances . . . may not make unilateral decisions without support from the Department of the Navy." *Id.*  As to the specific policy at

issue, "[g]iven that [the] gender integration policy was applicable to all the armed services, the [Marine Corps] needed to seek permission from the [Navy] preliminarily about receiving an exception to the policy." *Id.* In other words, "the Commandant would not be able to proceed without approval from the Secretary of the Navy." *Id.* This factor thus also supports the Department's withholdings.

The third factor concerns "the nature of the discussion in the challenged document and, specifically, whether it sets out the author's view of options and considerations regarding an agency's policy or, rather, explains or expresses the policy itself." *Judicial Watch, Inc. v. U.S. Department of Justice*, 20 F. Supp. 3d at 271. "[T]he deliberative process privilege *does* cover . . . memoranda that concern the *advisability* of a particular policy, but do not authoritatively state or determine the agency's policy." *Elec. Frontier Found. v. U.S. DOJ*, 739 F.3d 1, 8 (D.C. Cir. 2014) (emphasis in original). The Dunford memoranda concerned the advisability of the planned gender integration policy. Second Hogue Decl. ¶ 21; Hogue Decl. ¶ 15. The memoranda contained, for example, the author's views of how full implementation of the policy would affect Marine Corps combat effectiveness, and the author's view that the Marine Corps should be exempted from full implementation of the policy. *See, e.g.*, Second Hogue Decl. ¶ 19. Thus, the nature of the discussion in the internal memoranda falls squarely within Exemption 5.

For the fourth factor, "courts inquire as to whether the document was responsive to a request, particularly a request from a senior official with decision-making authority to a subordinate in an advisory position." *Judicial Watch, Inc. v. U.S. Department of Justice*, 20 F. Supp. 3d at 272. Here, there is no evidence that senior officials requested the memoranda. *See* Second Hogue Decl. ¶ 22; *see generally* Hogue Decl. Even so, the other three factors weigh strongly in favor of the exemption, and it thus applies here.

Finally, the Department has met its burden to show a foreseeable harm from disclosure. A recent amendment to FOIA provides that an "agency shall withhold information" under Exemption 5, "only if the agency reasonably foresees that disclosure would harm an interest protected by" the exemption or if "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i) (FOIA Improvement Act); *see Judicial Watch, Inc. v. U.S. DOJ*, No. 17-cv-0832, 2019 WL 4644029, at *3 (D.D.C. Sept. 24, 2019). The Department cites to multiple foreseeable harms. It states first that disclosure "would have a chilling effect on future advice and discourage open and frank discussions among senior officials on critical and sensitive military matters." Byrne Decl. ¶ 12, Dkt. 21-2. This accords with the "ultimate aim" of Exemption 5, which is to "prevent injury to the quality of agency decisions." *Petrol. Info. Corp.*, 976 F.2d at 1434; *see id.* at 1433 n.5 (explaining the three interests protected by Exemption 5 as facilitating "creative debate and candid consideration of alternatives within an agency," "protect[ing] the public from the confusion that would result from premature exposure to discussions occurring before the policies affecting it had actually been settled upon," and ensuring "the integrity of the decision-making process itself by confirming that officials would be judged by what they decided, not for matters they considered before making up their minds." (internal quotation marks and alterations omitted)).[2] By explaining the issue of gender integration in the military, the candid debate and

---

[2] The Department also cites public confusion as an additional form of foreseeable harm. It explains that "release would confuse the public into believing that the Department of Defense does not currently support the increased opportunities for service of women within the Armed Forces (a belief that is incorrect)." Byrne Decl. ¶ 12. In fact, the "Marine Corps is executing and implementing the approved gender-integration policy and has been doing so since 2015." Hogue Decl. ¶ 15. "Additional release of documents from 2015 would therefore serve only to confuse, rather than further inform, the public about the current efforts of the Marine Corps to implement gender integration throughout the [Marine Corps]." *Id.* The D.C. Circuit has explained that public confusion is a "subsidiary rationale" for Exemption 5, and "has special force with respect to disclosures of agency positions or reasoning concerning proposed *policies*."

analysis it produced, as well as the harm that would result from disclosing internal memoranda
that raised concerns about that proposed policy, the Department has provided "context or insight
into the specific decision-making processes or deliberations at issue, and how they in particular
would be harmed by disclosure." *Ctr. for Investigative Reporting v. U.S. Customs & Border
Prot.*, 436 F. Supp. 3d 90, 107 (D.D.C. 2019).  In sum, the Department properly withheld the two
Dunford memoranda.

## B.   The Related Documents

The plaintiffs also challenge the withholding of several documents related to the two
Dunford memoranda.  The first group of documents is a set of slides entitled "Recommended
Standards" created by the Marine Corps Training and Education Command for the Marine
Commandant to aid his decision on the gender integration policy.  *See* Second Hogue Decl. ¶ 9.
The slides included a list of recommended standards (which were never adopted) in light of the
proposed gender integration policy that the Command believed were necessary for Marines to be
successful in each occupational specialty.  *Id.* ¶ 10.  The second is an information paper entitled
"USMC Gender Integration Long-Term Study & Assessment," written by a team serving under
the Deputy Commandant for Manpower and Reserve Affairs and provided to the Commandant.
*Id.* ¶¶ 13–14.  The paper outlined proposed plans for a study on the gender integration issue
(which never took place) and was used to "explor[e] policy options."  *Id.* ¶¶ 14–15.  The third is
a chart that listed occupational specialties that the Marine Corps recommended be closed off to

---

*Petrol. Info. Corp.*, 976 F.2d at 1436 n.10.  The rationale, however, "protects the public from the
confusion that would result from *premature* exposure to discussions occurring before the policies
affecting it had actually been settled upon."  *Id.* at 1433 n.5 (emphasis added).  Here, it cannot be
said that exposure would be premature, as the Marine Corps is already implementing the gender
integration policy.  Hogue Decl. ¶ 15.  For that reason, the public confusion rationale has
minimal, if any, force here.

female Marines. *Id.* ¶¶ 27–28. The chart was attached to the second Dunford memorandum and showed the practical implications of the memorandum's conclusion. *Id.* The final document lists various units and support billets; it was also attached to the second Dunford memorandum. *Id.* ¶ 32. The document describes which regiments would be affected by a change in policy and how in particular they would be affected. *Id.* ¶ 34.

Here again, the Department properly invokes Exemption 5 as these supporting documents are predecisional and deliberative. *See* 5 U.S.C. § 552(b)(5). The documents served either as support for the Commandant's initial decisionmaking process on gender integration, Second Hogue Decl. ¶¶ 9, 14, or as attachments to his memoranda to the Secretary of the Navy. *Id.* ¶¶ 27–28, 32. Thus, like the memoranda they supported, these documents predate the Secretary's decision on the topic. *See id.* ¶ 20; *Judicial Watch, Inc. v. FDA*, 449 F.3d at 151 (holding that a document is predecisional if it was generated before the adoption of an agency policy). And, also like the memoranda they support, these documents are deliberative, as they "reflect[] the give-and-take of the consultative process," *id.*, both within the Marine Corps in the context of the initial formulation of the Commandant's opinion and in the context of the Commandant's later deliberation with the Secretary of the Navy. *See* Second Hogue Decl. ¶ 20. Two of the other *Judicial Watch* factors likewise support the invocation of Exemption 5. 20 F. Supp. 3d at 271–72. Like the memoranda, the supporting documents all appear to have been drafted by subordinates to a superior, the Commandant of the Marine Corps, either for his own analysis or for attachment to his memoranda. Second Hogue Decl. ¶¶ 11, 14, 28, 34. And they all concern "options and considerations regarding an agency's policy," *Judicial Watch, Inc. v. U.S. Department of Justice*, 20 F. Supp. 3d at 271, and its "advisability." *Elec. Frontier Found.*, 739 F.3d at 8. Finally, the same foreseeable harms that would arise from release of the

memoranda would also arise from release of these supporting documents, including the chilling of candid internal military analysis and discussion on controversial issues.  Second Hogue Decl. ¶¶ 12, 14.

The plaintiffs argue in response that some material in these supporting documents is purely factual, and that such information should not be protected by Exemption 5.  Pls.' Opp'n at 9, 10, 11, Dkt. 17.  "Under the deliberative process privilege, factual information generally must be disclosed, but materials embodying officials' opinions are ordinarily exempt."  *Petrol. Info. Corp.*, 976 F.2d at 1434 (citing *EPA v. Mink*, 410 U.S. 73, 87–91, 93 (1973)).  Even accepting the plaintiffs' assertion that some portion of the undisclosed material was purely factual in nature, that does not mean the material was improperly withheld.  "The fact/opinion distinction . . . is not always dispositive; in some instances, 'the disclosure of even purely factual material may so expose the deliberative process within an agency' that the material is appropriately held privileged."  *Id.* (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977)).  Indeed, the D.C. Circuit has "caution[ed] against reflexive fact/opinion characterization as the way to decide the full range of Exemption 5 cases."  *Id.* at 1435.  Rather, the cases "sound a common theme: To fall within the deliberative process privilege, materials must bear on the formulation or exercise of agency policy-oriented *judgment*."  *Id.*  Here, any factual materials were intrinsically related to the Marine Corps' judgment about the advisability of the gender integration policy.  The factual analysis was used to support the broader discussion of the topic, which informed the Commandant's position and eventual deliberations with the Secretary.  *See* Second Hogue Decl. ¶¶ 11, 14, 28, 34.  "To the extent that predecisional materials, even if 'factual' in form, reflect an agency's preliminary positions or ruminations about how to exercise discretion on some policy matter, they are protected under Exemption 5."

*Petrol. Info. Corp.*, 976 F.2d at 1435.  Because that is the case here, the Department's reliance on Exemption 5 is proper.

    **C.**    **Segregability**

       Finally, the Department has satisfied its segregability obligations.  FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  An agency may satisfy this obligation by "(1) providing a *Vaughn* index that adequately describes each withheld document and the exemption under which it was withheld; and (2) submitting a declaration attesting that the agency released all segregable material."  *Nat'l Sec. Couns. v. CIA*, 960 F. Supp. 2d 101, 207 (D.D.C. 2013), *aff'd*, 969 F.3d 406 (D.C. Cir. 2020).  The segregability requirement does not apply to non-exempt material that is "inextricably intertwined" with exempt material, *Mead Data*, 566 F.2d at 260, and agencies are entitled to a presumption that they disclosed all reasonably segregable material, *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

       Here, the Department has met this standard.  The *Vaughn* index catalogs in detail which documents or passages were withheld, the extent to which they were withheld (in full or in part), the exemptions covering the information, as well as a description of why any information was withheld.  *See generally Vaughn* Index.  Further, the Hogue declaration attests that the agency released non-exempt material and that all "remaining redactions in the records [were] justified under Exemption 5."  Second Hogue Decl. ¶ 7.  Thus, the Department has met its segregability obligations.  *See Nat'l Sec. Couns.*, 960 F. Supp. 2d at 207.

## CONCLUSION

For the foregoing reasons, the Department's Motion for Summary Judgment is granted, and the plaintiffs' Cross Motion for Summary Judgment is denied.  A separate order consistent with this decision accompanies this memorandum opinion.


January 27, 2021

DABNEY L. FRIEDRICH
United States District Judge